1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7
8

UNITED STATES OF AMERICA,

Plaintiff,

Case No.  94-cr-20079-EJD-1

9

v.

**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**

10
11

ANTHONY JAMAL JONES,

Defendant.

Re: Dkt. No. 72

12
13

In 1995, Anthony Jamal Jones pleaded guilty to various robbery and firearms charges and

14

was sentenced principally to 357 months (or 29.75 years) in prison.  Mr. Jones is currently serving

15

out his term of imprisonment in the custody of the Bureau of Prisons ("BOP") at USP Atlanta.

16

Mr. Jones moves this Court for his immediate release pursuant to 18 U.S.C. § 3582(c),

17

arguing that changes in federal sentencing law and the coronavirus pandemic constitute

18

"extraordinary and compelling reasons" for a reduction in his sentence.  The Government opposes

19

Mr. Jones's request.  For the reasons set forth below, the Court will GRANT Mr. Jones's motion

20

for a sentence reduction and order his prompt release.

21

**I.    BACKGROUND**

22

The following background facts are undisputed.

23

In 1994, Mr. Jones was charged with five counts of armed robbery, *see* 18 U.S.C. §

24

2113(a) & (d), and five counts of using a firearm in furtherance of a crime of violence, *see* 18

25

U.S.C. § 924(c).  Dkt. No. 73-1 (indictment).  These charges were brought in connection with a

26

series of bank robberies that Mr. Jones and another individual, Patrick Reed, committed when Mr.

27

Jones was 21 years old.  Dkt. No. 73-2 (presentence report ("PSR"), filed under seal) at 3-6.

28

Case No.: 94-cr-20079-EJD-1
ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

1

United States District Court
Northern District of California

United States District Court
Northern District of California

On January 4, 1995, Mr. Jones entered into a plea agreement under which he pleaded guilty to the five counts of armed robbery (Counts 1-5) and to two counts of using a firearm in furtherance of a crime of violence (Counts 6 and 10). Dkt. No. 19; Dkt. No. 73-3 (plea agreement) at 1-2. In exchange for Mr. Jones's guilty plea, the Government agreed to and did move to dismiss the other three counts of using a firearm in furtherance of a crime of violence. *Id.* at 4; Dkt. No. 18.

As the parties did not agree to a particular sentence, *see* Dkt. No. 73-3 at 7, Mr. Jones was sentenced by District Judge James W. Ware on March 8, 1995, *see* Dkt. No. 23. Judge Ware sentenced Mr. Jones to a total of 29 years 9 months incarceration, to be followed by 5 years of supervised release.[1] Dkt. No. 73-4 (judgment). The term of imprisonment consists of: (1) 57 months for the five counts of armed robbery (Counts 1-5); (2) a mandatory, consecutive 60 months for the first § 924(c) count (Count 6); and (3) a mandatory, consecutive 240 months for the second § 924(c) count (Count 10). *Id.* The 57-month sentence as to Counts 1-5 was in the lowest possible range of the then-applicable version of the U.S. Sentencing Guidelines (the "Guidelines"). *See* Dkt. No. 73-3 at 6-7.

Mr. Jones was initially committed to FCI Florence in Colorado, beginning in April 1995. While there, in 1997, Mr. Jones was convicted of misdemeanor simple assault and sentenced to 12 months incarceration, to run consecutive to the sentence imposed in the above-captioned case. Dkt. No. 73-5 (Dkt. No. 73-6 (docket for Case No. 97-cr-00159 in the District of Colorado). Since then, Mr. Jones's prison term appears to have been largely uneventful. *See* Dkt. No. 73-5 ("BOP Summary Reentry Plan"). Mr. Jones was later transferred to USP Atlanta, where he is currently incarcerated. *Id.* at 3.

Mr. Jones is presently 48 years old. Dkt. No. 73-9 (Exhibit I, BOP medical records, filed under seal). He has been incarcerated for more than 25 years. According to the BOP, he is

---

[1] Mr. Jones is to serve five years of supervised release as to Counts 1, 2, 3, 4, and 5, to run concurrently with each other and with three years each as to Counts 6 and 10, to run concurrently with each other and with the total term imposed on Counts 1, 2, 3, 4, and 5, for a total term of supervised release of five years. Dkt. No. 73-4 at 4.

Case No.: 94-cr-20079-EJD-1
ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

2

United States District Court
Northern District of California

projected to satisfy his sentence in the instant case and begin serving his sentence in the Colorado case on September 15, 2020; he is projected to be released on September 14, 2021.  Dkt. No. 78-1.

Now before the Court is Mr. Jones's motion for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1), commonly referred to as compassionate release.  Dkt. No. 72 ("Mot.").  Mr. Jones filed his motion on June 12, 2020, at which time he had not yet satisfied the administrative exhaustion requirement at 18 U.S.C. § 3582(c)(1)(A).  The parties agree that Mr. Jones has now exhausted his administrative remedies, however, and the motion has been fully briefed; it is thus ripe for the Court's review.  *See* Dkt. Nos. 78 ("Opp."); 79 ("Reply").

## II.     LEGAL STANDARD

A federal district court "may not modify a term of imprisonment once it has been imposed" except in limited circumstances.  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824–25 (2010).  18 U.S.C. § 3582(c)(1)(A) identifies one of the "exception[s] to the general rule of finality."  *Dillon*, 560 U.S. at 824.  Pursuant to this provision, a court may "reduce the term of imprisonment" "upon a motion of the Director of the Bureau of Prisons, or upon motion of the defendant . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).  In determining whether "extraordinary and compelling reasons" for reducing the defendant's sentence, the Court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."  *Id.* § 3582(c)(1)(A).  The Court must also ensure that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*  Pursuant to 28 U.S.C. § 994, which sets forth the "duties of the Commission," the policy statement "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

In addition, as alluded to above, § 3582(c)(1)(A) contains an exhaustion requirement: A defendant may bring a motion on his own behalf only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to bring the motion on his behalf or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's

Case No.: 94-cr-20079-EJD-1
ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

United States District Court
Northern District of California

1    facility, whichever is earlier." *Id.* To fulfill this requirement, Mr. Jones submitted a request for a

2    sentence reduction to the Warden of the USP Atlanta on May 26, 2020. Dkt. No. 77. The parties

3    agree that 30 days elapsed since that unanswered request on June 25, 2020, and that the Court thus

4    presently has jurisdiction over Mr. Jones's motion. *See* Opp. at 3; Reply at 2.

5    **III.   DISCUSSION**

6        In his § 3582(c)(1) motion, Mr. Jones moves for a reduction in his sentence of at least 14

7    months, which would allow for his immediate release. Mr. Jones offers two "extraordinary and

8    compelling reasons" that, "taken alone, or considered together," he believes justify the requested

9    reduction: (1) the COVID-19 pandemic, and (2) significant changes in sentencing law—namely,

10   the First Step Act's elimination of the practice of "stacking" mandatory § 924(c) sentences and the

11   U.S. Supreme Court's holding in *United States v. Booker*, 543 U.S. 220 (2005), making the

12   Guidelines advisory rather than mandatory. Mot. at 6-7. Mr. Jones further submits that the factors

13   under 18 U.S.C. § 3553(a)—including his significant efforts toward rehabilitation—support

14   compassionate release. Mot. at 17.

15       The Government opposes release, arguing that these reasons are not "extraordinary and

16   compelling." In addition, the Government maintains that a reduction based on changes to

17   sentencing law would not be consistent with the Sentencing Commission's policy statement at

18   § 1B1.13 of the Guidelines. The Government also asks the Court to limit any sentence

19   modification that it might grant to time served.

20       Having considered the parties' submissions and the applicable law, the Court concludes

21   that the combination of changes in federal sentencing law, Mr. Jones's potential risk of serious

22   illness from COVID-19, and the § 3553(a) factors constitute extraordinary and compelling reasons

23   for his release. The Court further finds that § 1B1.13 of the Guidelines presents no barrier to

24   modifying Mr. Jones's sentence. Finally, the Court rejects the Government's counterproposal of

25   time served and grants Mr. Jones's request for a reduction of 14 months.

26

27

28   Case No.: 94-cr-20079-EJD-1
     ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE
                                        4

United States District Court
Northern District of California

### A.    The Sentencing Commission's Policy Statement Re "Extraordinary and Compelling Reasons"

Turning to the merits of Mr. Jones's request, the Court begins with the Government's threshold argument that a court, in determining whether "extraordinary and compelling reasons" exist, may only consider the reasons specifically identified by the Sentencing Commission in its commentary to § 1B1.13 of the Guidelines.  *See* Opp. at 5-6.  The Court finds that that it is not so limited and may consider any relevant circumstances.

As noted above, a sentence reduction may be granted under § 3582(c)(1)(A) only if it "is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The relevant Sentencing Commission policy statement is § 1B1.13 of the Guidelines.  U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018).  The Government points the Court to the Application Notes, which set forth "four examples of what constitutes an 'extraordinary and compelling circumstance,'" Opp. at 5:

> (A) **Medical Condition of the Defendant**.—
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > > (I) suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) **Age of the Defendant**.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) **Family Circumstances**.—

Case No.: 94-cr-20079-EJD-1
ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) **Other Reasons**.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*Id.* § 1B1.13 cmt. 1.

In the Government's view, "a defendant must be able to demonstrate one of the listed reasons in (A)–(C) above or demonstrate some other condition that *in the discretion of the Director of BOP* qualifies for compassionate release." Opp. at 6 (emphasis in original). That is, the Government does not believe the Court has discretion to consider reasons other than those examples listed in § 1B1.13; doing so—the argument goes—would not be "consistent with" the Sentencing Commission's policy statement per 18 U.S.C. § 3582(c)(1)(A). Applying its interpretation to Mr. Jones's motion, the Government agrees that this Court may consider whether an inmate's preexisting health conditions puts him at a high risk of serious illness from COVID-19 pursuant to Application Note (1)(A)(ii)(I) ("The defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."). *See* Opp. at 10-11. On the other hand, the § 1B1.13 Application Notes have not identified non-retroactive changes in sentencing law as an "extraordinary and compelling reason" for compassionate release; therefore, the Government says, this Court may not grant Mr. Jones's motion on that ground.

The Court rejects the Government's reading of 18 U.S.C. § 3582(c)(1)(A) and USSG § 1B1.13.

First and foremost, "the listing of examples of extraordinary and compelling reasons in the Policy Statements § 1B1.13 and Application notes is not, by its language, exclusive." *United States v. McPherson*, No. CR94-5708RJB, 2020 WL 1862596, at *4 (W.D. Wash. Apr. 14, 2020).

United States District Court
Northern District of California

The Application Notes state that "extraordinary and compelling reasons exist under any of the circumstances set forth below"; they do not state that extraordinary and compelling reasons exist *only* under the circumstances described.  U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1.  In other words, "the listing of things that are not considered extraordinary and compelling does not limit what else may be considered extraordinary and compelling."  *McPherson*, 2020 WL 1862596, at *4.  Thus, consideration of other relevant factors is not inconsistent with the plain terms of the Sentencing Commission's policy statement, even if it remains binding in full.  *See United States v. Hicks*, 472 F.3d 1167, 1172 (9th Cir. 2007), *abrogated on other grounds by Dillon v. United States*, 560 U.S. 817 (2010) ("[A]s USSG § 1B1.10(b) states only that the court 'should consider the term of imprisonment that it would have imposed had the amendment been in effect' in 1993, and not that it may only impose that sentence, departing from the 1993 sentence would not conflict with the language of the policy statement.") (alterations omitted).

Moreover, the Court observes that USSG § 1B1.13 has not been amended since the passage of the First Step Act ("FSA").  First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018).  Under the version of 18 U.S.C. § 3582(c)(1) that was in force when the Sentencing Commission last issued USSG § 1B1.13, only the Director of the BOP could seek a sentence reduction under the statute, on an inmate's behalf.  If the Director of the BOP declined to do so, the defendant could not challenge that decision in federal court.  *See, e.g., Orlansky v. FCI Miami Warden*, 754 Fed. App'x. 862, 866-67 (11th Cir. 2018).  In order to "increase[e] the use and transparency of compassionate release," the FSA permitted defendants to file § 3582(c)(1) motions directly with the court, without the BOP's backing.  First Step Act § 603(b)(1), 132 Stat. at 5239.  The FSA thus "remove[d] sole authority from the Bureau of Prisons, imbuing judges with the ability to decide compassionate release motions if the Bureau of Prisons denies or defers the motion."  *United States v. Adeyemi*, No. CR 06-124, 2020 WL 3642478, at *14 (E.D. Pa. July 6, 2020).

USSG § 1B1.13, however, still presupposes the prior system.  *See United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) ("[T]he outdated policy statements still

Case No.: 94-cr-20079-EJD-1
ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

United States District Court
Northern District of California

1   assume compassionate release 'may by granted only upon motion by the Director of the Bureau of

2   Prisons.'").  For instance, it incorrectly states that "a reduction under this policy statement may be

3   granted only upon motion by the Director of the Bureau of Prisons."  U.S. Sentencing Guidelines

4   Manual § 1B1.13 cmt. 4.  The parties do not dispute that this aspect of the policy statement has

5   been overridden by statute.  Application Note 1(D) could likewise be seen as "anachronistic" in

6   "its sole reference to the BOP Director."  *United States v. Schafer*, No. 18-6152, 2020 WL

7   2519726, at *4 (W.D.N.Y. May 18, 2020); *see also Adeyemi*, 2020 WL 3642478, at *15 (finding

8   that the introductory phrase to Note 1(D)—"as determined by the Director of the Bureau of

9   Prisons"—conflicts with the FSA and therefore does not bind the court).

10          It should be noted that the Sentencing Commission's failure to revise § 1B1.13 is likely not

11  deliberate: As several district courts have pointed out, "the Commission currently has only two

12  voting members, two shy of the four that it needs to amend the Guidelines."  *United States v.*

13  *Marks*, No. 03-CR-6033L, 2020 WL 1908911, at *6 (W.D.N.Y. Apr. 20, 2020) (citing *United*

14  *States v. Webster*, No. 91cr138, 2020 WL 618828, at *4 n.3 (E.D. Va. Feb. 10, 2020)); *see also*

15  *United States v. Brown*, No. 4:05-CR-00227-1, 2020 WL 2091802, at *5 n.9 (S.D. Iowa Apr. 29,

16  2020).

17          In any event, because the Sentencing Commission has not yet "harmonized its policy

18  statements" with the FSA, courts have split as to whether they are bound to follow the terms of

19  § 1B1.13 as currently drafted.  *United States v. Chan*, No. 96-CR-00094-JSW-13, 2020 WL

20  1527895, at *4 (N.D. Cal. March 31, 2020) (internal quotations omitted).  A "growing consensus"

21  of courts have held that there is no longer an "applicable policy statement" by the Sentencing

22  Commission regarding when "extraordinary and compelling reasons" exist under the amended

23  § 3582(c)(1)(A).  *Marks*, 2020 WL 1908911, at *3; *see also, e.g.*, *United States v. Quinn*, No.

24  91CR00608DLJ1RS, 2020 WL 3275736, at *5 (N.D. Cal. June 17, 2020); *Adeyemi*, 2020 WL

25  3642478, at *15; *Brown*, 2020 WL 2091802, at *5; *Chan*, 2020 WL 1527895, at *4; *Rodriguez*,

26  424 F. Supp. 3d at 681-82; *but see United States v. Saldana*, 807 Fed. App'x 816, 820 (10th Cir.

27  2020); *United States v. Shields*, No. 12-CR-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal.

28  Case No.: 94-cr-20079-EJD-1
     ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

United States District Court
Northern District of California

1  June 4, 2019) (rejecting "the proposition that the Court may disregard guidance provided by the

2  Sentencing Commission where it appears that such guidance has not kept pace with statutory

3  amendments").  At a minimum, this would mean that courts are no longer restricted to the

4  examples identified by the Sentencing Commission prior to the enactment of the FSA.

5       Consistent with numerous other courts to have confronted this issue, then, the Court

6  concludes that it may consider extraordinary and compelling reasons other than the examples in

7  the Application Notes to § 1B1.13.

8       **B.    Extraordinary and Compelling Reasons**

9       Having determined that it is not limited to the exemplars in USSG § 1B1.13, the Court

10  now considers whether there are "extraordinary and compelling reasons" for a reduction of Mr.

11  Jones's sentence.  The Court believes they do.  As explained below, changes in federal sentencing

12  law have rendered Mr. Jones's continued incarceration extraordinarily unjust.  That injustice,

13  together with the potential that Mr. Jones might be at increased risk for severe illness from

14  COVID-19 and the various factors to be considered under 18 U.S.C. 3553(a), warrants the modest

15  reduction in his sentence that he seeks.

16       **i.    Changes in Sentencing Law**

17       There have been two major changes to federal sentencing law since Mr. Jones's sentencing

18  in 1995.  First and foremost, at the time of Mr. Jones's sentencing, the trial court had no choice but

19  to impose the 25-year consecutive prison sentence he received for his two § 924(c) charges; today,

20  the mandatory minimum for the same charges would be only 10 years.  The reason is that 18

21  U.S.C. § 924(c)(1)(C) had been interpreted by the Supreme Court to prescribe the "stacking" of

22  mandatory minimums for multiple § 924(c) charges included in the same indictment.  *See Deal v.*

23  *United States*, 508 U.S. 129, 132 (1993).  That is, under *Deal*, a sentencing court was required to

24  impose a minimum prison sentence of 5 years for a first § 924(c) conviction followed by 20 years

25  for a "second or subsequent conviction" § 924(c) conviction; those sentences were also required to

26  be served consecutively.  *Id.* at 130-31 (quoting the then-applicable version of 18 U.S.C.

27  § 924(c)(1)(C)); *see also Quinn*, 2020 WL 3275736, at *2.

28  Case No.: 94-cr-20079-EJD-1
    ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

However, *Deal*'s interpretation of § 924(c) was controversial.  Some believed that the statute's reference to a "second" conviction was ambiguous and should not be construed to cover convictions charged in the same indictment as the first conviction.  *See, e.g.*, *United States v. Abreu*, 962 F.2d 1447, 1453 (10th Cir. 1992), *cert. granted, judgment vacated*, 508 U.S. 935 (1993); *United States v. Jones*, 965 F.2d 1507, 1519 (8th Cir. 1992); *Deal*, 508 U.S. at 146 (Stevens, J., dissenting); *United States v. Neal*, 976 F.2d 601, 603 (9th Cir. 1992) (Fletcher, J., dissenting).  Under this view, the increased penalties for a second or subsequent conviction would apply only to those offenders who have been convicted prior to the commission of the second conviction because "[a] statute designed to punish a second offender more severely when he has not learned from the penalty imposed for his prior offense should not be construed to apply before that penalty has had the chance to have the desired effect on the offender." *Abreu*, 962 F.2d at 1452–53; *see also Neal*, 976 F.2d at 603 (Fletcher, J., dissenting) ("The majority's interpretation drains the statute of its intended impact on the offender. Defendants like Neal, who the majority believes may simultaneously receive first and subsequent convictions, never have the opportunity to learn from their initial mistakes."); *Gonzalez v. United States*, 224 F.2d 431, 434 (1st Cir. 1955) ("[I]f reformation and retribution are the primary purposes of the legislation, such ends would be served best by applying the statutes only to those offenders who have been convicted prior to the commission of the subsequent offense.").

Even the U.S. Sentencing Commission declared that stacking results in "overly severe sentences for offenders who have not previously been convicted of an offense under section 924(c)" and recommended that Congress override *Deal* by statutory amendment.  U.S. Sentencing Comm'n, *Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System*, at 270, 368 (Oct. 2011), available at http://www.ussc.gov/news/congressional-testimony-and-reports/mandatory-minimum-penalties/report-congress-mandatory-minimum-penalties-federal-criminal-justice-system.

With the FSA, Congress did just that.  In § 403 of the FSA—entitled "Clarification of § 924(c)"—Congress eliminated "stacking" under § 924(c) by replacing the phrase "second or

Case No.: 94-cr-20079-EJD-1
ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

subsequent conviction" with "violation of this subsection that occurs *after a prior conviction under this subsection has become final*."  First Step Act § 403(a), 132 Stat. at 5221-22.  Under the amended statute, a defendant like Mr. Jones would be subject to only a 10-year mandatory minimum for two § 924(c) convictions instead of the 25-year mandatory minimum Mr. Jones received.  The amendment was not made retroactive, however.  *See id.* § 403(b), 132 Stat. at 5222 ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.").

A second change in law that came after Mr. Jones was sentenced was the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which made the Guidelines advisory rather than mandatory.  *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).  Post-*Booker*, a district court "may determine . . . that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing."  *Id.* at 91.  For instance, a court may now impose the "mandatory minimum sentence under § 924(c) and a one-day sentence for the predicate violent or drug trafficking crime" if the court found such a sentence to be sufficient under the circumstances.  *Dean v. United States*, 137 S. Ct. 1170, 1177 (2017).  Because Mr. Jones was sentenced under the mandatory Guidelines scheme, however, the district court was unable to adjust the sentences for his bank robbery counts to account for the mandatory minimums on the § 924 counts.  That Judge Ware accepted the Government's recommendation of a sentence at the "low end of the guideline range applicable to the bank robbery offenses," indicates that a downward departure may well have been appropriate.  Dkt. No. 73-3 (plea agreement) at 4; *see* Dkt. No. 73-4 (judgment).  But as with § 403 of the FSA, *Booker* did not automatically provide relief to defendants like Mr. Jones who were sentenced before the decision issued.  *Carrington v. United States*, 503 F.3d 888, 894 (9th Cir. 2007), *opinion amended on denial of reh'g*, 530 F.3d 1183 (9th Cir. 2008).

The upshot of the foregoing is that Mr. Jones was sentenced under a regime that has not only been held unconstitutional but has also been substantially amended to eliminate the brutal

Case No.: 94-cr-20079-EJD-1
ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE
11

United States District Court
Northern District of California

harshness of stacking.  The Court finds that, on the instant facts—including the severity of Mr.

Jones's sentence and the gross disparity between his sentence and the sentence that Congress now

deems appropriate—the above-described changes in sentencing law weigh strongly in favor of

compassionate release.  Today, Mr. Jones would likely receive 14.75[2] years imprisonment, if not

less; the sentence he actually received—29.75 years—is more than twice that length.  As a result,

Mr. Jones "long ago completed a sentence which Congress . . . consider[s] sufficient and

proportionate to his misconduct."  *Quinn*, 2020 WL 3275736, at *3.  And because Mr. Jones was

only 22 years old when he began serving his sentence, he has spent more than half his life in

prison.  Under these conditions, Mr. Jones's continued incarceration is unjust.

This Court's conclusion is supported by the decisions of the many other district courts that

have granted compassionate release to similarly situated defendants.  These courts have found that

where an "enormous sentencing disparity" is created by the very "changes to federal sentencing

law" at issue here, that disparity "constitutes an 'extraordinary and compelling reason' . . . for

compassionate release."  *Quinn*, 2020 WL 3275736, at *4; *see also, e.g.*, *United States v. Bryant*,

No. CR 95-202-CCB-3, 2020 WL 2085471, at *3 (D. Md. Apr. 30, 2020) ("[T]he court finds that

Bryant's continued incarceration under a sentencing scheme that has since been substantially

amended is a permissible "extraordinary and compelling" reason to consider him for

compassionate release."); *United States v. Brown*, No. 4:05-CR-00227-1, 2020 WL 2091802, at *9

(S.D. Iowa Apr. 29, 2020); ("[T]he manifest unfairness of keeping a man in prison for decades

more than if he had committed the same crime today . . . cuts in favor of a sentence reduction

under § 3582(c)."); *McPherson*, 2020 WL 1862596, at *5 (granting a sentence reduction to a

defendant "sentenced to over 32 years in prison," which is "15 years beyond what is now deemed

a fair penalty by our law"); *but see, e.g.*, *United States v. Neubert*, No. 107CR00166SEBKPF,

2020 WL 1285624, at *3 (S.D. Ind. Mar. 17, 2020).  Courts have also granted sentence reductions

to defendants that were handed severe sentences under the mandatory Guidelines—"a sentencing

---

[2] Accounting only for the reduction of the mandatory minimum on his second § 924(c) charge
from 20 years to 5 years.

Case No.: 94-cr-20079-EJD-1
ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

1    regime that is longer valid." *United States v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL

2    2572525, at *10 (C.D. Cal. May 21, 2020); *see also United States v. Redd*, No. 1:97-CR-00006-

3    AJT, 2020 WL 1248493, at *5 (E.D. Va. Mar. 16, 2020).

4        The Government makes two main arguments against considering the changes in sentencing

5    law discussed above. In the Government's view, Defendant "is effectively seeking retroactive

6    application of" the FSA's provision eliminating stacking. Opp. at 7. But the fact that FSA § 403

7    was not made categorically retroactive "does not prohibit the court from considering this

8    legislative change in deciding whether to reduce [a defendant's] sentence." *Quinn*, 2020 WL

9    3275736, at *3 (quoting *United States v. Decator*, No. 95-cr-0202, 2020 WL 1676219, *4 (D. Md.

10   Apr. 6, 2020)). On the contrary, "[i]t is not unreasonable for Congress to conclude that not all

11   defendants convicted under § 924(c) should receive new sentences, even while expanding the

12   power of the courts to relieve some defendants of those sentences on a case-by-case basis."

13   *Quinn*, 2020 WL 3275736, at *3 (quoting *Decator*, 2020 WL 1676219, *4 and *United States v.*

14   *Maumau*, No. 08-cr-00758, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020)); *accord Redd*, 2020

15   WL 1248493, at *3 (finding that although the FSA § 403 was not automatically applicable on a

16   retroactive basis, it "increased the opportunity for defendants to obtain a reduction in their

17   sentence based on an individualized consideration under designated criteria."); *McPherson*, 2020

18   WL 1862596, at *5 ("Section 3582 (c)(1)(A) provides a safety valve against what otherwise would

19   be a harsh, unjust, and unfair result stemming from a non-retroactivity clause."). After all, the

20   very purpose of § 3582(c)(1) is to permit sentence reductions in situations where no specific

21   statute affords a defendant relief but "extraordinary and compelling reasons" nevertheless call for

22   such a reduction.

23       Moreover, it cannot be denied that FSA § 403 reflects a "legislative rejection" of stacking

24   and a "legislative declaration of what level of punishment is adequate" for violations of 18 U.S.C.

25   § 924(c). *Redd*, 2020 WL 1248493, at *6. Though the statute did not provide automatic relief to

26   defendants like Mr. Jones, it has in no uncertain terms established that sentences like Mr. Jones's

27   "unfair and unnecessary." *Id.* What is more, in titling the amendment "Clarification of Section

28   Case No.: 94-cr-20079-EJD-1

ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

United States District Court
Northern District of California

924(c)," Congress suggested that "what happened to Mr. [Jones]" as a result of the Supreme Court's decision in *Deal* "is something [that] should never have occurred," *United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *16 (E.D.N.Y. Apr. 22, 2020); *accord Quinn,* 2020 WL 3275736, at *4 ("The portion of the First Step Act amending § 924(c) is titled 'Clarification of Section 924(c), suggesting that Congress never intended the statute to result in a 'stacked' sentence like Quinn's.") (alterations and internal quotation marks omitted).  The Court therefore concludes that FSA § 403's lack of blanket retroactivity is not a bar to relief under § 3582(c)(1) on a case-by-case basis.

The Court likewise rejects the Government's objection that reducing a defendant's sentence based on subsequent legal changes would "undermine the finality of sentences."  Opp. at 9.  Although "the principle of finality" is indisputably "essential to the operation of our criminal justice system," *Teague v. Lane*, 489 U.S. 288, 309 (1989), it is not without exceptions.  As the Ninth Circuit has explained, sentence reductions under 18 U.S.C. § 3582(c) are "acts of lenity"; as such, they "are not constrained by the general policies underlying initial sentencing or even plenary resentencing proceedings."  *United States v. Padilla-Diaz*, 862 F.3d 856, 861 (9th Cir. 2017).  In other words, 18 U.S.C. § 3582(c) represents Congress's judgment that the generic interest in finality must give way in certain individual cases.

For these reasons and those detailed above, this Court joins the growing majority of courts in holding that the "sea changes" in sentencing law wrought by *Booker* and the FSA, *United States v. Pree*, 408 F.3d 855, 874 (7th Cir. 2005); *Haynes*, 2020 WL 1941478, at *15, weigh strongly in favor of reducing Mr. Jones's sentence.

### ii.  COVID-19

A further consideration for the Court is the COVID-19 pandemic.  Although Mr. Jones does not claim to have tested positive for the virus, he asserts there is a significant risk that he will contract the virus and suffer complications from it if required to remain in custody.

There is no question that the ongoing COVID-19 pandemic is a global health crisis, and that it poses a significant threat to the health of inmates in the federal prison system.  As this and

United States District Court
Northern District of California

other courts have held, however, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see United States v. Luck*, No. 5:12-CR-00888-EJD-2, 2020 WL 3050762, at *2 (N.D. Cal. June 8, 2020).  The BOP has detailed the various preventative and mitigation measures it has implemented to protect inmates in its facilities, and this Court has not yet been given any cause to second-guess the efficacy of those measures.  *See* Federal Bureau of Prisons, *BOP COVID-19 Modified Operations Plan*, https://www.bop.gov/coronavirus/covid19_status.jsp (accessed July 8, 2020); *see generally* Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/index.jsp (accessed July 8, 2020).

At the same time, this Court has recognized that a particular inmate's heightened susceptibility to contracting the virus or to experiencing complications therefrom may rise to the level of extraordinary and compelling reasons for release.  *See, e.g.*, *United States v. Madrigal*, No. 5:18-CR-00356-EJD-3, 2020 WL 3188268, at *2 (N.D. Cal. June 15, 2020).  The Government even acknowledges as much: "If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition—in combination with the likelihood that a defendant may contract COVID-19 while incarcerated and suffer severe symptoms as a result—may constitute a 'serious' medical condition 'from which [the defendant is not expected to recover,' which 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility.'"  Opp. at 10-11 (quoting USSG § 1B1.13 cmt. n.1(A)(ii)(I)).

In this case, Mr. Jones argues that he is "more vulnerable to becoming seriously ill should he contract COVID-19" because he has essential hypertension and is African American.  Mot. at 13-14; *see* Dkt. No. 73-9 (Exhibit I, BOP medical records, filed under seal).

The Court may quickly dispose of Mr. Jones's argument to the extent it is based on his being African American.  It is true that the CDC has reported higher rates of hospitalization

Case No.: 94-cr-20079-EJD-1
ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE
15

among "some racial and ethnic minority groups, including non-Hispanic black persons."  *See* Mot. at 14 (citing Centers for Disease Control, *COVID-19 in Racial and Ethnic Minority Groups*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last visited July 8, 2020)).  As this Court has previously explained, however, there is no evidence that African Americans are inherently more susceptible to coronavirus.  *See United States v. Wade*, No. 5:15-CR-00458-EJD-1, 2020 WL 3254422, at *3 (N.D. Cal. June 16, 2020).  The CDC instead attributes the higher rates of hospitalization amongst African Americans to "[l]ongstanding systemic health and social inequities."  Centers for Disease Control, *COVID-19 in Racial and Ethnic Minority Groups*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last visited July 8, 2020)).  That is, extrinsic factors such as living conditions, work circumstances, and the prevalence of certain underlying health conditions likely account for the statistical overrepresentation of minority groups among hospitalized patients.  *Wade*, 2020 WL 3254422, at *3 (citing Aaron Williams & Adrian Blanco, *How the Coronavirus Exposed Health Disparities in Communities of Color*, WASH. POST (May 26, 2020), https://www.washingtonpost.com/graphics/2020/investigations/coronavirus-race-data-map).  Hence, Mr. Jones's race is not itself a risk factor for serious illness from COVID-19.

On the other hand, Mr. Jones may be at heightened risk of serious illness due to his essential hypertension.  Since the early days of the pandemic, the CDC has maintained a list of underlying medical conditions that may increase a person's risk of severe illness from COVID-19.  *See* Centers for Disease Control, *Who is At Increased Risk for Several Illness?*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last modified June 25, 2020).  The Government argues that only pulmonary—and not essential—hypertension is included on that list.  Opp. at 11.  That may have been true in the past, *see, e.g.*, *United States v. House*, No. 14-CR-00196-CRB-1, 2020 WL 2557031, at *2 (N.D. Cal. May 20, 2020), but is no longer the case.  As of June 25, 2020, the CDC breaks its list into two groups: persons who "are at increased risk of severe illness" and persons who "might be at an increased risk for severe illness.  *Id.*  The first group comprises persons with conditions for which

Case No.: 94-cr-20079-EJD-1
ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

United States District Court
Northern District of California

the evidence of increased risk is the "strongest and most consistent"; the second group comprises

persons with conditions for which the evidence of increased risk is "mixed."  *See* Centers for

Disease Control, *Evidence used to update the list of underlying medical conditions that increase a*

*person's risk of severe illness from COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/need-

extra-precautions/evidence-table.html (last modified June 25, 2020).

"Pulmonary hypertension" is in the first group and "hypertension" is in the second group.

In other words, the CDC has determined that pulmonary hypertension almost certainly puts

persons at increased risk of severe illness; other forms of hypertension might also elevate an

individual's risk, though the evidence is less definitive.  Because the evidence of increased risk

due to essential hypertension is suggestive but not conclusive, the Court does not decide today

whether having essential hypertension would be sufficient on its own to justify compassionate

release.  But considered in combination with Mr. Jones's rehabilitative efforts and the changes in

sentencing law described above, the Court finds that Mr. Jones's potential for heightened risk

weighs in favor of compassionate release.

### iii. Section 3553(a) Factors

A modest reduction in Mr. Jones's sentence is also supported by the factors at 18 U.S.C.

§ 3553(a), which this Court must consider "to the extent that they are applicable," *see* 18 U.S.C.

§ 3582(c)(1)(A).

Section 3553(a) instructs courts to impose a sentence "sufficient, but not greater than

necessary" to accomplish the goals of sentencing.  18 U.S.C. § 3553(a).  The factors are: "(1) the

nature and circumstances of the offense and the history and characteristics of the defendant; (2)

the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentences

and the sentencing range established by the Sentencing Guidelines; (5) pertinent policy statements

issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities

among defendants who have similar criminal records and have been found guilty of similar

conduct; and (7) the need to provide restitution to victims."  *United States v. Hernandez*, 795 F.3d

1159, 1168 (9th Cir. 2015).  Having considered these factors, the Court finds that the

United States District Court
Northern District of California

1   compassionate release of Mr. Jones would satisfy the goals of sentencing.

2          First of all, Mr. Jones has already served nearly all of his original 29.75-year custodial

3   sentence.  He is projected to satisfy his sentence in the instant case and begin serving his sentence

4   in the Colorado case on September 15, 2020; he is then projected to be released on September 14,

5   2021.  As a result, a mere 14-month reduction in his original sentence would be sufficient to

6   permit Mr. Jones's immediate release.

7          Meanwhile, Mr. Jones's post-sentencing rehabilitation indicates that an additional 14

8   months of incarceration would be unnecessary.  Post-sentencing rehabilitation is a "critical factor"

9   in judging the reasonableness of a sentence under § 3553(a).  *See Pepper v. United States*, 562

10  U.S. 476, 491 (2011) (explaining that post-sentencing rehabilitation goes to §§ 3553(a)(1),

11  3553(a)(2)(B)–(C)); *see United States v. Trujillo*, 713 F.3d 1003, 1010 (9th Cir. 2013).

12  Accordingly, numerous district courts have granted compassionate release based on the

13  combination of a defendant's post-sentencing rehabilitation efforts and other factors—including

14  changes to sentencing law.  *See, e.g.*, *Marks*, 2020 WL 1908911, at *16 ("Combined with the

15  changes in the sentencing laws, Marks's efforts toward rehabilitation lead me to conclude that he

16  has established extraordinary and compelling reasons for a reduction of his sentence."); *United*

17  *States v. Defendants*, No. 99-CR-257, 2020 WL 1864906, at *5-*6 (C.D. Cal. Apr. 13, 2020)

18  (granting § 3852(c)(1)(A) motion based on defendant's rehabilitation and changes to the

19  "stacking" provisions of § 924(c)); *Decator*, 2020 WL 1676219, at *3 (same); *Chan*, 2020 WL

20  1527895, at *6 ("[W]hen the Court considers the record presented by Chan regarding his

21  rehabilitation efforts in combination with the amendments to Section 924(c)'s stacking provisions,

22  the Court concludes he has demonstrated extraordinary and compelling reasons to reduce his

23  sentence on those two counts.").

24         In this case, Mr. Jones has submitted ample documentation of his efforts at personal

25  growth and rehabilitation during his incarceration support a reduction in his sentence.  As part of

26  his motion, Mr. Jones has provided a copy of his "Summary Reentry Plan - Progress Report"

27  dated May 26, 2020 and signed by his prison case manager, Shanell Whitley.  *See* Dkt. No. 73 ¶ 6;

28  Case No.: 94-cr-20079-EJD-1
    ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

Dkt. No. 73-5 ("Progress Report").  The Progress Report documents Mr. Jones's work assignments, education history, discipline, and other particulars of his 25 years in prison.  According to the Report, Mr. Jones has taken 44 classes in a wide range of subjects, including Financial Planning; Commercial Driver's License; Spanish; Parenting Skills; Job Search / Interview Technique; Anger Management; Real Estate; Microsoft Office 2010; Business Planning; The Great Depression; Classic Literature; Beginner Digital Photography; Business Law; Spelling and Vocabulary; Recycling and Waste Management; Lawn Care; and Acrylic Painting.  In addition, the "Work Assignment Summary" indicates that Mr. Jones is currently working as a unit orderly and that he "assist[s] with Institutional Admission and Orientation for incoming inmates." Summary Reentry Plan at 1.  The same section of the report further notes that he "has earned excellent work evaluations."  *Id.*

The Court finds that these are significant accomplishments.  They evince Mr. Jones's dedication to making changes in his life and his self over the past 25 years in prison.  Furthermore, in his letter to the Court, Mr. Jones acknowledges the "many mistakes" he made when he "was first imprisoned at the age of 22 years old" and that his imprisonment was "self-inflicted."  Dkt. No. 73-8.  Mr. Jones then goes on to profess his "commit[ment] to being a better man, son, father, and now grandfather" and his intention to use his "voice . . . to help the youth understand that prison for many is the end of the road and no place to spend the rest of your life."  *Id.*  Based on this record, the Court is persuaded that Mr. Jones's demonstrably successful strides toward rehabilitation weigh in favor of a reduction in his sentence.

The Government, meanwhile, does not argue that a sentence reduction would undermine goals of sentencing or otherwise contravene § 3553(a).  Accordingly, the Court finds that the § 3553(a) factors support Mr. Jones's request.

### iv.    Conclusion

Thus, when the Court considers the significant changes in law since Mr. Jones's sentencing, Mr. Jones's heightened risk of complications from COVID-19, and the applicable § 3553(a) factors, the Court concludes Mr. Jones has made out extraordinary and compelling

Case No.: 94-cr-20079-EJD-1
ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

United States District Court
Northern District of California

1   reasons to reduce his sentence under § 3582(c)(1)(A).

### C.   Danger to the Community

Finally, the Court must assure that Mr. Jones "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S. Sentencing Guidelines Manual § 1B1.13(2).  Mr. Jones maintains that he is not, and the Government does not argue to the contrary.

The Court is satisfied the Mr. Jones is not a danger to the safety of any person or to the community.  Notwithstanding the seriousness of Mr. Jones's offenses, he was only 21 years old at the time of their commission.  At 47 years old, Mr. Jones has now spent more than half of his life and nearly all of his adulthood in federal prison.  His conduct in prison has demonstrated that he no longer poses a danger to the community.  Mr. Jones's disciplinary history has had a positive trajectory, with no incidents since 2011.  Progress Report at 3.  Moreover, Mr. Jones's BOP work assignment as a unit orderly assisting with institutional admission and orientation for new inmates indicates that prison staff trust Mr. Jones to be a positive role model for new inmates.  *See id.* at 1.  As detailed in Part III.B.iii, Mr. Jones has also made significant strides toward rehabilitation during his incarceration, including by taking courses such as Victim Awareness and Anger Management.  *See id.* at 2.

Finally, the Court notes that Mr. Jones "will not simply be turned loose as a result of this Order," *Quinn*, 2020 WL 3275736, at *2; rather, he will still have to complete five years of supervised released, as originally imposed by Judge Ware.  This will assist him in his "transition to community life" and "fulfill[] rehabilitative ends."  *United States v. Johnson*, 529 U.S. 53, 59 (2000).  During that transition and thereafter, Mr. Jones will have the support of his family and friends—six of whom wrote letter of support for the instant motion.  *See* Dkt. Nos. 73-10 to 73-15.

The Court therefore finds that Mr. Jones's release would not be a danger to the community or to any individual person.

### D.   Amount of Sentence Reduction

One final matter remains: the amount of the sentence reduction.  As noted above, a 14-

Case No.: 94-cr-20079-EJD-1
ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

United States District Court
Northern District of California

1    month sentence reduction would be sufficient to permit Mr. Jones's immediate release, and that is

2    the reduction the Court will grant.

3          In so doing, the Court rejects the Government's request to limit any sentence modification

4    to time served, which amounts to a reduction of less than 2 months.  *See* Opp. at 14.  For the

5    reasons already given, Mr. Jones has shown that a reduction of at least 14 months is warranted.  In

6    particular, Mr. Jones's 29.75-year sentence is 15 years longer than what is now deemed

7    appropriate for his crimes.  That is why Mr. Jones asks the Court to reduce his sentence on the

8    second § 924(c) charge from 20 years to 5 years.  *See* Reply at 7-8.  The Court will deny Mr.

9    Jones's request because it is unnecessary to effectuate his release.  At the same time, the Court

10   agrees that a mere 2-month reduction would not be commensurate with the injustice here.

11   Moreover, anything less than actual release would fail to address Mr. Jones's risk of complications

12   from contracting COVID-19.

13         It is true, of course, that a sentence reduction of 14 months will mean that Mr. Jones has

14   already completed the custodial term for his Colorado case.  But that is simply the consequence of

15   the sentence reduction to which Mr. Jones is entitled.  If the Government believes the District of

16   Colorado should resentence Mr. Jones in light of this Order, it should move for resentencing

17   before that Court.

18   **IV.   CONCLUSION**

19         For the foregoing reasons, the Court will GRANT Mr. Jones's motion for compassionate

20   release pursuant to 18 U.S.C. § 3582(c)(1)(A).  Mr. Jones's sentence on Count 10 is hereby

21   reduced by 14 months incarceration, which should permit his immediate release.  His sentence

22   remains otherwise unchanged.  Accordingly, upon release, he shall be on supervised release for

23   five years (five years as to Counts 1, 2, 3, 4, and 5, to run concurrently with each other and three

24   years each as to Counts 6 and 10, to run concurrently with each other and with the total term

25   imposed on Counts 1, 2, 3, 4, and 5 above, for a total term of supervised release of five years).

26   Defendant's previously imposed conditions of supervised release remain in place; the Court will

27   also add the following condition, which was recommended by the Probation Office for the

28

Northern District of California[3]:

> You must submit your person, residence, office, vehicle, or any property under your control, including any computers, cell phones, and other electronic devices, to a search.  Such a search shall be conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to such a search may be grounds for revocation. You must warn any residents that the premises may be subject to searches.

The Probation Office for the Northern District of California has proposed a release plan and verified the suitability of the residence.  However, because Mr. Jones plans to reside in the Eastern District of California, this order is stayed for **up to 7 days** to allow for verification of the residence and release plan by the Eastern District of California.  The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel.  There shall be no delay in ensuring travel arrangements are made.  If more than **7 days** are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended.

Finally, once Mr. Jones is released from custody, he must self-quarantine at his residence for an additional 14 days, as directed by the probation officer.

**IT IS SO ORDERED.**

Dated: August 25, 2020

_____
EDWARD J. DAVILA
United States District Judge

---

[3] The recommendation was made by Probation Officer Jacinta Hoving, in a letter to the Court dated July 2, 2020.

Case No.: 94-cr-20079-EJD-1
ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE